### ROHM et al. v. MARTIN DENNIS CO.

(Circuit Court of Appeals, Third Circuit. January 12, 1920.)

#### No. 2471.

1. PATENTS ⬤⟿99, 328—FOR HIDE PREPARATION INVALID FOR FAILURE TO DISCLOSE INVENTION.

    Rohm patent, No. 886,411, for a process for bating hides, *held* invalid, because of the application's failure to fully and clearly disclose the invention, as required by Rev. St. § 4888 (Comp. St. § 9432).

2. PATENTS ⬤⟿98—NECESSITY OF CLEARLY DISCLOSING INVENTION.

    Rev. St. § 4888 (Comp. St. § 9432), and the purpose of the patent laws, require a full disclosure of the invention before the patent is granted, in order that the public may, at the expiration of the patent, have full use of the invention.

Appeal from the District Court of the United States for the District of New Jersey; J. Warren Davis, Judge.

Patent infringement suit by Otto Rohm and the Rohm & Haas Company against the Martin Dennis Company. From a decree dismissing the bill (263 Fed. 106), plaintiffs appeal. Affirmed.

Charles Neave and Merrell E. Clark, both of New York City, for appellants.

McCarter & English, of Newark, N. J., and Arthur L. Fullman, of New York City (Park Benjamin, of New York City, of counsel), for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and MORRIS, District Judge.

BUFFINGTON, Circuit Judge. The bill filed in the court below by Otto Rohm and others, owners of patent No. 886,411, issued to him May 5, 1908, for a preparation of hides for the manufacture of leather, charged the Martin Dennis Company with infringement of said patent. On final hearing, that court entered a decree dismissing the bill. Thereupon Rohm and his associates took this appeal.

[1] After full argument before this court and due consideration, we are of opinion the court below committed no error in dismissing the bill, and we rest our conclusion on the ground that the patent is invalid by reason of the fact that the patentee did not, in his application, give the public that full and clear disclosure of his invention Revised Statutes, § 4888 (Comp. St. § 9432) requires.

The patent covers a process for bating hides which is so fully described in the opinion below that we save needless restatement by referring to the report thereof at 263 Fed. 106. Briefly stated, the alleged invention of Rohm was the substitution by him of the pancreas of animals for the dog manure used in the well-known process of bating hides. The old process and Rohm's improvement by substituting animal pancreas for dog manure are thus stated in his specification:

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"For bating hides, that is to say, for removing the lime and fatty matter from the hides after the liming process, dog manure has been used for a long time.

"The present invention has for its object to provide a simpler and more reliable method of removing the lime, together with the fatty matter and the remnant of the hairs. For this purpose I treat the hides with an aqueous extract from the pancreas of animals. The principal constituent of the said pancreatic extract is trypsin, the effect of which is materially assisted by the other enzyme of the pancreas, viz. steapsin, which has the property of splitting up fat and completing the saponification of the fat contained in the hides."

## Rohm's disclosure as to use of his process is as follows:

"The details of procedure will appear from the following example: A pancreas weighing about 250 grams is extracted with 1 liter of water, and 10 cubic centimeters of this extract are added to 990 cubic centimeters of a 0.1 per cent. aqueous solution of ammonium chloride. The solution thus obtained is an excellent bate."

Is this, in connection with the other parts of the specification, a compliance with Revised Statutes, § 4888, which required that—

"Before any inventor or discoverer shall receive a patent for his invention or discovery, he shall * * * file in the patent office a written description * * * of the manner and process of making * * * and using it, in such full, clear, * * * and exact terms as to enable any person skilled in the art * * * to which it appertains, * * * to make * * * and use the same."

Has this basic statutory condition precedent to the grant of a patent been complied with by the present applicant? The evidence satisfies us it has not. On that point we refer to the testimony of Otto Haas, one of the plaintiffs, and who has overseen the manufacture and sale, under the patent, of the extract of pancreas disclosed by the patent, which was commercially styled "Oropon." It was sold to some 130 customers, among whom was the witness Beadenkopf, in connection with whose use of "Oropon" experiments by Haas and him were carried on, "to find out with what quantities of 'Oropon,' in lime, and at what temperatures, we could obtain the best possible results." It further appeared that it was the plaintiffs' custom to send their chemist to all of their customers so desiring, in order to give them like instructions. When the witness was asked whether the instructions so given involved any departure from those of the paragraph of the patent above specified, which stated, "The solution thus obtained is an excellent bate," he refused to answer. He was then asked whether the "Oropon" they sold was prepared by that formula; but this he refused to say, as also whether it contained any different ingredients from those disclosed in the patent.

[2] Manifestly there was no reason, if the patent disclosed the entire invention and full workable directions for using it, why these questions should not have been answered; but if the specification did not sufficiently disclose the invention, and full and clear instructions for its use, it was clearly of interest to the plaintiffs to withhold such information. For if this withholding of information could be thus

successfully carried out for the next 6 years, as it has been during the 11 years since the patent issued, the patentee would then for 17 years have had a monopoly of his undisclosed invention, and at the end of the 17 years he and his customers would have a like monopoly of the undisclosed invention for all time, unless they then chose to take the public into their confidence. But such is not the spirit of the patent law. Its purpose is that such full disclosure shall be made before the patent is granted that the public may, at the expiration of the patent, have a full and workable use of the invention. Indeed, this initial "full, clear, concise, and exact" disclosure is the real consideration moving from the patentee for the grant of patent monopoly by government; and so necessary is a disclosure of this kind that the authorities have gone to the extent of holding (see opinion of Chief Justice Taney in Wood v. Underhill, 5 How. 1, 12 L. Ed. 23, cited by the Supreme Court in The Incandescent Lamp Patent, 159 U. S. 474, 16 Sup. Ct. 75, 40 L. Ed. 221, that—

"If, from the nature and character of the ingredients to be used, they are not susceptible of such exact description, the inventor is not entitled to a patent."

Satisfied, as we are, that the specification did not make the required statutory disclosure, we hold the patent invalid.

The decree below is therefore affirmed.